UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRODIE AMARANTE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>　　　　　　Defendant. | Case No. 1:23-cv-00556-BAM<br><br>**ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>(Docs. 16, 19) |

**INTRODUCTION**

Plaintiff Brodie Amarante ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2] (Docs. 16, 19.) Having

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Docs. 8, 11, 12.)

1

considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is not based upon proper legal standards. Accordingly, this Court will GRANT Plaintiff's Motion for Summary Judgment (Doc. 16), DENY Defendant's Cross-Motion for Summary Judgment (Doc. 19), REVERSE the agency's determination to deny benefits, and REMAND the matter for further proceedings consistent with this order.

## FACTS AND PRIOR PROCEEDINGS

In January 2021, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on July 31, 2020. AR 179-85. Plaintiff's application was denied initially on March 15, 2021, and upon reconsideration on May 14, 2021. AR 77-107. Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Jane Maccione held a hearing on November 17, 2021. AR 32-60. ALJ Maccione issued an order denying benefits on the basis that Plaintiff was not disabled on February 24, 2022. AR 12-28. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied. AR 1-11. This appeal followed.

**November 17, 2021 Hearing Testimony**

ALJ Jane Maccione held a telephonic hearing on November 17, 2021. AR 32-60. Jeff Beeman, an impartial vocational expert, also appeared and testified. AR 53-58. Plaintiff's attorney Romina Otoya was also present. The ALJ began by admitting exhibits 1A through 4A, 1B through 11B, 1D through 9D, 1E through 11E, and 1F through 6F into evidence. AR 36.

Plaintiff's attorney opened by requesting the ALJ review medical listing 1.15 for chronic back pain, medical listing 1.18 for chronic pain in the upper and lower extremities, and medical listing 3.00 for severe obstructive sleep apnea. AR 37. Plaintiff's attorney then confirmed that there were no additional pulmonary function tests supporting a 3.00 severe obstructive sleep apnea listing beyond what was in the record. *Id.*

Upon examination by the ALJ, Plaintiff testified that his last job was at Crystal Creamery and Foster Dairy Farms, where he worked from 1997 to July 31, 2020. AR 38. He said that following that, he received income from state disability and had four weeks of vacation that was paid out. *Id.*

Plaintiff testified that he worked as a foreman in the B side of the plant and had previously worked as a foreman in the ice cream department. AR 39. Plaintiff said that in his last year of work there, he took a forklift job to make his work easier, but it made things worse. *Id.* He stated that in his forklift job, he would move products, palletize products by moving them into refrigeration or a truck, and load trucks. *Id.* He said that in the forklift job, he would need to lift over 50 pounds and would use a sit-down forklift. AR 39-40. Plaintiff said that the forklift job involved more time sitting than standing, and that he generally did not supervise or train anyone. AR 40. He said that he did not have input into other employees' performance reviews. *Id.*

Plaintiff testified that immediately prior to his forklift position, he was an ice cream foreman, which required him to run a crew of seven workers, to start the morning setup and get the machines running. *Id.* He said that he worked in that position for approximately seven years. AR 40-41. He stated that he did not have hiring and firing authority for the workers on his crew, sometimes had input into his crew's performance reviews, and would give them warnings if his crew did anything but would typically leave reprimands to management. AR 41. Plaintiff said that he was a working foreman and would be doing many of the same tasks that the people on his crew were doing. *Id.* He testified that once the machines were set up, he would do CIP cleaning inspection, wash lines, and cover breaks and lunches as the crew was frequently shorthanded. AR 41-42. Plaintiff said that in that role he would lift over 50 pounds and spent most of his time on his feet. AR 42.

Plaintiff testified that prior to the ice cream foreman position, he worked as a butter churn operator, in which his duties included CIPs cleaning and sanitizing inspection, starting up the churns, helping set up the product, ensuring that clean tanks were tempered and ready, shrink-wrapping pallets, operating the machines, and giving breaks and lunches. AR 42-43. Plaintiff testified that he needed to lift over 50 pounds for that role and was on his feet almost 12 hours per day. AR 43. He said that he was not given a stool to sit on if needed in any of his jobs. AR 44. He stated that he worked as a churn operator for five to seven years. In that position, he said that he would make sure everyone in the crew got things done but for reprimands he would speak to a supervisor and did not have hiring and firing authority. *Id.*

Plaintiff testified that at Foster Farms, he was a B-Side Foreman, during which he had to oversee "evap dryer" operators, floor workers, the butter department, CIP cleaning systems, and fast-risers. AR 44. He said that he worked in the position just prior to 2006. AR 45. Under examination by the vocational expert, Plaintiff testified that the dates for the churn operator position were approximately 2002 to 2010. *Id*.

Plaintiff testified that his middle and lower back, permanent left leg damage, and throbbing hip pain have kept him from working. *Id*. Plaintiff said that he felt that his hip pain was coming from his back, but that it was difficult to tell, and he felt aching, throbbing, and shooting pains. AR 45-46. He stated that his ankles were alright if he was off of his feet, but the more he was on his feet, the more he would feel a sharp pain in his ankles. AR 46. He said that he fell twice at work before he left, which put him out of work. *Id*. Plaintiff testified that he was eventually able to get a CPAP machine for his sleep apnea, and tried it for three or four months, but his back pain caused him to toss and turn at night which prevented him from using his CPAP machine. AR 46-47. He also said that for his back pain, he would attempt to rehab it at his house, use a sit-down bike, do stretches, and get out and walk. AR 47. He noted that he always felt pain, however, and when his back became inflamed, he would not get out of bed for approximately two days to a month. *Id*. He said that there were three times in the past year where the "device hasn't held the pain." *Id*. Plaintiff stated that he took 75 milligrams of Amitriptyline at night, two 12-hour 15 milligram morphine tablets, and 90 Hydrocodone a month for flare-ups as pain medication. AR 48. He said that he did not have side effects from this pain medication but did have spasms as side effects of taking Gabapentin and was switched to Amitriptyline to help with those side effects. *Id*.

Plaintiff testified that he could sit for ten to fifteen minutes before needing to stand up. *Id*. Plaintiff said that the length of time that he could stand up varied depending on the condition of his hips, knees, and ankles, but could not stand in one spot or else his lower back would lock up, his feet would become numb, and his leg spasms would worsen. AR 48-49. He said that he could walk for approximately a mile before needing to sit down if his pain did not flare up. AR 49. He stated that these conditions had been a constant for 25 years. *Id*. Plaintiff testified that cold weather bothered him and that he did not have stairs at home but taking the stairs bothered him. *Id*. He said that going

up or down stairs was difficult, but it was probably easier going up than down stairs. AR 50. Plaintiff stated that he had a cane but tried not to use it, though brought it wherever he went. *Id.* He said that he used the cane when his pain flared up and he needed to go to a doctor's appointment or if he needed to get around and did not trust his legs. *Id.* Plaintiff said that he could lift a gallon of milk comfortably, could lift a flat of 24-ounce water bottles if he lifted correctly. He stated that he was right-handed and was able to take his right hand and touch the top of his head with his right, though it would cause some "pops," and could touch the top of his head with his left hand but it would cause a little pain, soreness, and flare-ups. AR 50-51.

On examination by his attorney, Plaintiff testified that he slept for less than two hours per night for the prior twenty years. AR 51. He stated that since being off work, he had been using marijuana gummies and CBD products, which allowed him to get three to six hours of sleep on good nights. *Id.* He said that when he had flare-ups, he typically went two or three days without sleeping. Plaintiff stated that when he was up and moving, he was tired all the time but would not nap, as that would lead to him not sleeping at all. *Id.* He said that due to lack of sleep, he had issues with his short-term memory and concentration. AR 51-52.

Plaintiff testified that following his lower back fusion, he could bend over and forward, but had issues bending side-to-side or turning left or right. AR 52. Plaintiff said that he recently had a CT scan and x-ray done from the Darroch Brain Institute, but had not discussed the results with his doctor, though his doctor had previously said that if a revision surgery was required, Plaintiff would be referred to UC Davis for surgery. AR 52-53.

Following Plaintiff's testimony, the ALJ elicited testimony from vocational expert ("VE") Jeff Beeman. AR 53-58. The VE classified Plaintiff's past work as Standalone Forklift Driver (DOT No. 921.683-050, medium, semi-skilled, SVP 3); Supervisor, Dairy Farm (DOT NO. 410.131-018, medium, skilled, SVP 7, performed at heavy); and Supervisor, Dairy Processing (DOT No. 529.131-014, medium, skilled, SVP 7, performed at heavy) in his various positions with the dairy farm. AR 53-54. The VE testified that these positions were performed at heavy, and based upon experience and extensive labor market surveying, farm operations quickly become more than medium given the lifting involved. AR 54.

The ALJ then asked the VE hypothetical questions.  For the first hypothetical, the ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and vocational background at a light exertional level, who: could climb ramps occasionally; could not climb stairs, ropes, ladders, or scaffolds; could balance, kneel, and crouch occasionally; could stoop and crawl only rarely; could push, pull, and operate foot controls occasionally with his lower right extremity; could reach overhead occasionally bilaterally; must avoid concentrated exposure to extremes of cold; could not work in consistently wet or damp environments; must be protected from workplace hazards such as unprotected heights and dangerous moving mechanical parts; and required the ability to sit or stand while remaining on task and is anticipated to have no more than five percent of the workday off task for changing positions.  *Id.*  The VE testified that the hypothetical individual could not perform any of Plaintiff's past work, and the conditions would eliminate work in a dairy farm.  AR 55.  The VE then asked for clarification regarding the ALJ's sit/stand limitation.  *Id.*  The ALJ stated that Plaintiff testified to 15 to 20 minutes of sitting or standing prior to needing to adjust.  *Id.*  The VE testified that an individual would have issues with or be precluded from light work if the sit and stand adjustments would occur every 15 minutes.  *Id.*  The ALJ then asked whether there would be work available in the economy if the sit and stand adjustments would occur every 30 minutes.  AR 56.  The VE testified that based upon his professional experience and experience with job analysis and employer expectations, work available included: Office Helper (DOT No. 239.567-010, light, unskilled, SVP 2, with approximately 75,000 jobs); Host (DOT No. 349.667-014, light, unskilled, SVP 2, with approximately 50,000 jobs); and Information Clerk (DOT No. 237.367-018, light, unskilled, SVP 2, with approximately 60,000 jobs nationally).  *Id.*  The VE testified that his answers were consistent with the DOT and with the VE's experience as to the stand/sit option.  *Id.*  The VE also testified that the opinion that five percent off-task behavior would not affect employability was based upon professional experience.  *Id.*

For the second hypothetical, the ALJ asked the VE to assume all of the restrictions from the first hypothetical with the ability to alternate between sitting and standing every 30 minutes, but the individual would require a cane for ambulation over 25 yards and over uneven terrain.  *Id.*  The VE testified that the cane restriction would bring the work down to sedentary, and noted that jobs

available would include: Office Clerk/Paster (DOT No. 249.587-014, sedentary, unskilled, SVP 2, with 40,000 jobs nationally); Officer Clerk/Addresser (DOT No. 209.587-010, sedentary, unskilled, SVP 2, with approximately 40,000 jobs nationally); Order Clerk (DOT No. 209.567-014, sedentary, unskilled, SVP 2, with approximately 50,000 jobs nationally).  AR 57.  The VE testified that this answer was consistent with the DOT.  *Id.*

For the third hypothetical, the ALJ asked the VE whether an individual would be able to maintain competitive employment if, because of their conditions, symptoms, or medications, the individual would have three absences three times per year that lasted from one week to one month for their conditions.  *Id.*  The VE testified that if absences rise to more than two per month on a continuous basis throughout the year, employers would not be able to keep that person.  *Id.*  The VE testified that this was based upon his experience in following up for employer expectations.  *Id.*  The ALJ then asked whether the individual being absent for a week three times a year would exceed the number of acceptable absences.  *Id.*  The VE testified that a week's absence three times per year would exceed the approximately two acceptable absences per month.  AR 58.  The ALJ then asked if an individual who would be off task greater than ten percent of the workday on a continuing and consistent basis because of their medications, symptoms, or conditions would be able to maintain competitive employment.  *Id.*  The VE testified that this individual would not be able to maintain competitive employment as they would be short of an eight-hour day on a consistent basis, and the VE's point of reference said that employers would not keep a person who was off task even at ten percent beyond the normal breaks and meal.  *Id.*  Plaintiff's attorney stated that she did not have questions for the VE.  *Id.*

Plaintiff's attorney closed by noting that if the ALJ did not find that Plaintiff met a medical listing, the combination of Plaintiff's pain, physical limitations, and mental limitations would prevent him from working on a sustained basis.  *Id.*

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

///

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 12-28. Specifically, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 31, 2020, the alleged onset date. AR 17. The ALJ identified the following severe impairments: degenerative disc disease and bilateral neuroforaminal stenosis of the lumbar spine status-post posterior L3-S1 fusion and spinal cord stimulator implant, spondylosis of the cervical spine, osteoarthritis of the right ankle status-post multiple surgeries, impingement syndrome of the bilateral shoulders, right trochanteric bursitis, and obstructive sleep apnea. AR 18. The ALJ also identified nonsevere impairments of gastroesophageal reflux disease ("GERD") and obesity. *Id.* The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 18-19.

Based on a review of the entire record, the ALJ found that Plaintiff retained the RFC to perform light work with the limitations that Plaintiff: was able to balance, kneel, and crouch occasionally; could stoop and crawl rarely, meaning less than occasionally; was able to push, pull, and operate foot controls occasionally with his right lower extremity; was able to reach overhead occasionally, bilaterally; must avoid concentrated exposure to extremes of cold; could not work in consistently wet or damp environments; must be protected from workplace hazards, such as unprotected heights and dangerous moving mechanical parts; required the ability to sit or stand while remaining on task, alternating every thirty minutes, and was anticipated to have no more than five percent of the workday off task for changing positions. AR 19-23. The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "medical opinion(s) and prior administrative medical finding(s)." AR 19; 19-23.

Given this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 23. However, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 24-25. The ALJ noted that examples of jobs consistent with Plaintiff's age, education, work experience, and RFC included: (1) Office Helper (DOT No.

239.567-010, light, unskilled, SVP 2, with approximately 75,000 jobs in the national economy); (2) Host (DOT No. 349.667-014, light, unskilled, SVP 2, with approximately 50,000 jobs in the national economy); and (3) Information Clerk (DOT No. 237.367-018, light, unskilled, SVP 2, with approximately 60,000 jobs in the national economy). AR 24-25. The ALJ therefore concluded that Plaintiff had not been disabled from July 31, 2020, through the date of the decision. AR 25.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The

9

burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

### DISCUSSION[3]

Plaintiff first argues that the ALJ erred by ignoring Plaintiff's medically determinable impairment of failed back syndrome or post-laminectomy syndrome at step two and later steps of the evaluation.  (Doc. 16 at 6-10.)  Plaintiff next contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony as inconsistent with the evidence.  (*Id.* at 10-13.)  Plaintiff further contends that the ALJ failed to sufficiently develop the record.  (*Id.* at 14-17.)

#### A.     **Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony as inconsistent with the evidence.  (Doc. 16 at 10-13.)   Plaintiff further contends that the ALJ also erred in considering Plaintiff's symptoms testimony given the ALJ's analysis of Plaintiff's lumbar impairment at step two.  (*Id.* at 10-11.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  AR 20.  However, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms, noting that the statements were not consistent with medical evidence and other evidence in the record.  *Id*.  The ALJ

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

First, the ALJ noted that the symptoms testified to by Plaintiff and his great aunt were inconsistent with the evidence in the record. AR 40-41. The ALJ summarized Plaintiff's testimony:

> The claimant reported that he stopped working because of back pain, fracture in spinal disc, fusion in lower back, right ankle and knee issues, nerve damage in left leg, and issues with both shoulders (Ex. 2E/2). He indicated that he was unable to sit, stand, or lay down for more than thirty minutes (Ex. 4E/1). He noted that he was able to walk one to two miles if not limited by pain (Ex. 4E/1). He attested that he did not climb stairs and did not lift weight over twenty pounds (Ex. 4E/2). He reported that he could not drive a car for longer than an hour (Ex. 4E/2). He noted that he slept for two hours or less (Ex. 4E/3). In a separate document the claimant reported that medication did not provide pain relief (Ex. 7E/6).
>
> The claimant testified that he is unable to work because of back, leg, and hip problems. He testified that he has constant aches and throbbing pain associated with such impairments. He testified that he fell twice at work because of his impairments. He testified that he uses a CPAP machine for sleep apnea, but has difficulties sleeping because of back pain. He testified that back pain has been so severe he has had to stay in bed for two days and such situation has occurred three times in the past year. He testified that he takes pain medication without side effects, but that other medications cause spasms. He testified that he could sit for fifteen minutes, stand for twenty minutes, and walk for one mile. He testified that he could lift up to a twenty-four pack of water if careful.

AR 20.

In discounting Plaintiff's symptoms testimony, the ALJ noted that, "As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the overall medical evidence which shows that the claimant is not as limited as alleged." *Id.* The ALJ then summarized the medical evidence in the record regarding Plaintiff's impairments, including physical examinations, treatment reports, and imaging records. AR 20-22.

Lack of supporting medical evidence is a factor that the ALJ can consider, but it cannot form the sole basis for discounting testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, while the ALJ reviewed the medical evidence in the record, the ALJ cited no other reason for discounting Plaintiff's testimony. *See* AR 20-22. Because the ALJ only relied upon the medical

evidence in discounting Plaintiff's testimony, the ALJ did not adequately discount Plaintiff's symptoms testimony.

Defendant contends that the ALJ also discounted Plaintiff's allegations based on the inconsistencies between the allegations of pain and effective treatment. (Doc. 19 at 5.) The Ninth Circuit has held that impairments "that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983)); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995)).

However, the ALJ did not state that she was discounting Plaintiff's testimony based on Plaintiff's effective or conservative treatment and solely noted that "claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the overall medical evidence which shows that the claimant is not as limited as alleged." *See* AR 20; 19-22. The Ninth Circuit has noted that "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). The lack of reasoning related to treatment in the ALJ's opinion demonstrates that the ALJ did not use Plaintiff's effective or conservative treatment to discount Plaintiff's testimony. *See* AR 20-23. Accordingly, Defendant's argument that the ALJ relied upon Plaintiff's effective or conservative treatment in discounting Plaintiff's testimony fails.

In support of this argument, Defendant also references the ALJ's citation to treatment notes within the ALJ's discussion of the medical record to dispute Plaintiff's symptoms of constant aches and throbbing pain. (Doc. 19 at 5.) Beyond concerns with post hoc rationalization, review of the treatment notes cited by the ALJ's opinion demonstrates varying effectiveness of treatment rather than

consistently effective and/or conservative treatment of Plaintiff's relevant symptoms. *See* AR 20-22, 338 (January 2021 progress notes noting general finding that Plaintiff was in no apparent distress" and continuing with pain meds and Gabapentin regarding Plaintiff's lumbar disc displacement); 604 (May 2021 progress notes showing change in medication, stating: "Taper off gabapentin. Start amitriptyline. 75 mg at bedtime advised to continue with pain management. Discontinue Zocor due to muscle aches and pain."); 608-609 (August 2021 general findings included that Plaintiff was "well developed, overweight in no apparent distress," but illness history noted that Plaintiff had "Medication for this Pain management. Sip fusion, stimulator and few injections in the past. Pain is still not controlled well and affecting his daily living."); 610 (August 2021 report noting continuing of medication and that "Pt is encouraged to call or message with any worsening symptoms, any changes in symptoms or any thoughts, questions or concerns. Patient should go to the ER if the symptom becomes more pronounced. Patient will come back for follow-up as discussed."). Additionally, the ALJ's opinion stated that "Good efficacy of treatment of obstructive sleep apnea with the CPAP machine was noted." AR 21. However, the progress notes cited suggest that while the CPAP machine may have good efficacy generally, the use of it to treat Plaintiff may not have been effective. AR 607 (July 2021 progress notes noting severe obstruction sleep apnea, "Quality of sleep is affected by pain," compliance card showed 90% compliance over the prior month with an average use of approximately four hours and 39 minutes, "Patient was informed about good efficacy of treatment and also informed about the minimum uses requirements and strongly encouraged him to aim for 6-7 hours of nightly usage"). The treatment reports cited by the ALJ therefore do not support Defendant's argument that the ALJ discounted Plaintiff's testimony based upon effective or conservative treatment.

Defendant further cites a Ninth Circuit case in support of the proposition that the amount, type, and effectiveness of treatment are important considerations when weighing a claimant's allegations. *See Bailey v. Colvin*, 669 F. App'x 839, 840 (9th Cir. 2016) (unpublished) ("The medical evidence suggests that many of [plaintiff]'s impairments had improved (e.g., migraines) or responded favorably to treatment…"). While consideration of treatment is relevant in evaluating claimants' allegations, in *Bailey,* the Ninth Circuit held that the "contradictions between [plaintiff]'s testimony and the medical

13

evidence, [plaintiff]'s inconsistent statements regarding painkillers, and [plaintiff]'s daily activities were specific, clear, and convincing reasons to discount her credibility." *Id.* Rather than relying principally on the plaintiff's treatment, the Ninth Circuit emphasized the medical evidence and daily activities as bases for discounting the plaintiff's testimony. *Bailey* therefore does not support Defendant's argument that a brief mention of treatment notes may act as a basis for discounting symptoms testimony.

    Defendant also contends that the ALJ discounted Plaintiff's allegations because they were inconsistent with Plaintiff's daily activities. (Doc. 19 at 5.) An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), superseded by regulation on other grounds (identifying two-step analysis in assessing the credibility of a claimant's testimony regarding the subjective pain or intensity of symptoms). Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id*. at 1113. The Ninth Circuit has also differentiated between daily activities that are transferable to a work environment and those such as "household chores and grocery shopping [which] are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 F. App'x 635, 637 (9th Cir. 2008).

    In support of the contention that the ALJ appropriately discounted Plaintiff's testimony based upon his daily activities, Defendant notes that while Plaintiff claimed to be able to sit for no more than 15 minutes at a time, he also reported that he could not drive a car for longer than an hour. AR 48 (Plaintiff testifying at November 2021 hearing that he could sit from 10 to 15 minutes before needing to stand up); 225 (February 2021 Exertion Questionnaire in which Plaintiff marked that he drove a case but could drive no more than one hour). However, the ALJ did not use Plaintiff's daily activities as a basis for discounting Plaintiff's symptoms testimony. *See* AR 20-23. This therefore appears to be impermissible post hoc rationalization. *See Bray*, 554 F.3d at 1225. Because the Court is limited to

reviewing the ALJ's decision based on the reasoning and factual findings offered by the ALJ in support of discounting the symptoms testimony, this argument does not support Defendant's contention that the ALJ appropriately discounted the symptoms testimony based upon a conflict between Plaintiff's reported activities and claimed limitations.

Furthermore, beyond one example of Plaintiff writing in February 2021 that he could drive for a maximum of one hour and testifying in November 2021 that he could only sit for approximately 10 to 15 minutes, neither Defendant nor the ALJ point to Plaintiff's daily activities that would be transferable to a work environment. *See* AR 19-23. Plaintiff's daily activities therefore did not provide a basis for the ALJ's discounting of Plaintiff's symptoms testimony. *See Blau*, 263 F. App'x at 637.

Accordingly, the Court concludes that the ALJ erred in discounting Plaintiff's subjective complaints.

**B. Remedy**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. See *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted). On remand, the ALJ should address whether Plaintiff's symptoms testimony is adequately supported or whether there are specific, clear and convincing reasons for rejecting Plaintiff's symptoms testimony.

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments concerning whether the ALJ erred in considering Plaintiff's medically determinable impairment of failed back syndrome or post-laminectomy syndrome at step two or later steps of the

evaluation and whether the ALJ failed to sufficiently develop the record. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

## **CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards. Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment (Doc. 16) is GRANTED;
2. Defendant's cross motion for summary judgment (Doc. 19) is DENIED;
3. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is GRANTED and the agency's determination to deny benefits is REVERSED; and
4. The Clerk of this Court is directed to enter judgment in favor of Plaintiff Brodie Amarante and against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **June 4, 2024**      /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE